IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FORMULA ONE LICENSING BV and FORMULA ONE WORLD CHAMPIONSHIP LIMITED<br><br>             Plaintiffs,<br><br>     v.<br><br> F1 NEW JERSEY, LLC, et al.,<br><br>             Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>          Civil Action<br>      No. 14-5812 (JBS/AMD)<br><br>         **OPINION** |

APPEARANCES:
Federick Lee Whitmer, Esq.
KILPATRICK TOWNSEND & STOCKTON LLP
1114 Avenue of the Americas, 21st Floor
New York, NY 10036
     Attorney for Plaintiffs

Trent S. Dickey, Esq.
SILLS CUMMIS & GROSS PC
The Legal Center
One Riverfront Plaza
Newark, NJ 07102
     Attorney for Defendants

**SIMANDLE, Chief Judge:**

## I.    INTRODUCTION

This is a trademark infringement action filed by Formula One Licensing BV and Formula One World Championship Limited (collectively, "Formula One") against various related corporate and partnership entities along with their owner, Richard J. Valentine. Broadly, Formula One alleges that Defendants conduct kart racing and other businesses under various "F1" names (F1 New Jersey, F1 Boston, F1 Outdoors, F1 Long Island, and F1

Hospitality and related domain names), and in so doing, have infringed upon Plaintiffs' rights to the "F1" and "FORMULA 1" word and design marks which are key components of the F1 brand.

The issue presently before the Court, however, is a narrow one. In response to Defendants' challenge to this Court's personal jurisdiction, Plaintiffs have moved for discovery to determine the nature and scope of the contacts that the moving Defendants – specifically, Kart Management Group, LLP, Karting America LLC, RJV Enterprises LLC, New England Kart Raceway, Inc., and Richard J. Valentine – have with New Jersey. Defendants argue that Plaintiffs have not alleged with reasonable particularity the possible existence of minimum contacts with New Jersey and have not met their burden for jurisdictional discovery. For the reasons that follow, the Court will grant in part and deny in part Plaintiffs' motion. Discovery will be permitted to determine whether the Court has specific jurisdiction over Karting America LLC, RJV Enterprises LLC, and New England Kart Raceway, Inc., and will also be permitted to determine the names of John Doe Companies I-III. Jurisdictional discovery will be denied with respect to Kart Management Group, LLP and Richard J. Valentine.

2

## II.  BACKGROUND

### A. Factual and Procedural Background[1]

The Formula One Plaintiffs own and license the "F1" and "FORMULA 1" word marks and the "F1" design mark depicted below ("the F1 Marks"), which are used in connection with the annual FIA Formula One World Championship ("F1 Championship") motor sport race:



[2]

(Am. Compl. [Docket Item 18] ¶¶ 1, 9-10.) Plaintiffs allege that Richard J. Valentine, along with a number of interrelated business entities allegedly owned and managed by Valentine, have wrongfully exploited these marks for their own commercial purpose by conducting and advertising kart racing and other businesses under "F1 _____" names such as F1 Boston, F1 Outdoors, F1 Hospitality, and F1 Karting New Jersey, with the following

---

[1] The facts are taken from Plaintiff's Amended Complaint [Docket Item 18]. Because the Court is called on to determine solely whether jurisdictional discovery should be granted, the Court omits a detailed summary of the various infringement allegations in Plaintiffs' Complaint and will focus on the facts pertinent to deciding the jurisdictional questions before it.

[2] Images used throughout this opinion are from Plaintiffs' motion for jurisdictional discovery. [Docket Item 32].

design marks which Plaintiffs contend are confusingly similar to Formula One's:



Plaintiffs bring this action under the Lanham Trademark Act, 15 U.S.C. § 1114(1), complaining that Valentine and his companies have co-opted the F1 Marks to brand motorsport facilities in New Jersey, Massachusetts, and New York, and merchandise sold at those facilities; along with race cars, aircraft, airplane hangars, other vehicles and uniforms, and services ranging from hospitality services to private aircraft chartering. (Id. ¶ 11-12.) In addition to trademark infringement (Count One), Plaintiffs assert claims for unfair competition, dilution of trademark, and cybersquatting under 15 U.S.C. § 1125(A), (C), and (D) (Counts Two, Three, and Four), as well as state law claims for infringement, unfair competition, and deceptive trade practices (Counts Six, Seven, and Eight).[3]

A number of parties entered into settlement agreements,[4] leaving only Valentine, Kart Management Group, LLP ("Kart Management"), Karting America LLC ("Karting America"), RJV

---

[3] Count Five does not appear in Plaintiffs' Amended Complaint.
[4] These defendants include NJ Motorsports, LLC; F1 Air Group, LLC; F1 Air LLC; F1 Air Group Two; F1 Air Logistics, LLC; F1 Long Island, LLC; F1 Long Island Real Estate, LLC; and Moto 1 Long Island, LLC. (Pearson Decl. in Supp. of Mot. for Jurisd. Disc. ¶ 36.)

Enterprises LLC ("RJV"), New England Kart Raceway, Inc. ("NE Kart Raceway"), and unnamed John Doe Companies I, II, and III as Defendants in the case.

Defendants moved to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue to the District of Massachusetts, because Valentine is a resident of Massachusetts and the Defendant entities have their principle places of business in that state.[5] Plaintiffs sought an extension of time to respond together with a motion for jurisdictional discovery. Briefing on Defendants' motion to dismiss is currently stayed pending a decision on Plaintiffs' motion, which is fully briefed.[6]

---

[5] Defendants initially moved to dismiss or to transfer venue [Docket Item 11] in response to Plaintiffs' original Complaint. After Plaintiffs filed an Amended Complaint, Defendants moved to dismiss a second time. [Docket Item 22.] Because Defendants' second motion to dismiss is directed towards Plaintiffs' Amended Complaint, it supersedes their first motion to dismiss. The Court will therefore deny Defendants' first motion to dismiss as moot in the accompanying Order. However, because both Plaintiffs and Defendants have relied upon Valentine's Certification filed with Defendant's first motion to dismiss, the Court will consider those citations.

[6] The parties stipulated that Plaintiffs' motion should be decided first and briefing on the motion to dismiss should be stayed pending a decision on whether Plaintiffs are entitled to jurisdictional discovery. [Docket Item 36.] The Court subsequently entered an order staying Defendants' motion to dismiss [Docket Item 37].

**B. Plaintiff's Motion for Jurisdictional Discovery**

Plaintiffs seek jurisdictional discovery over the remaining Defendants in this case to determine their connections to New Jersey. As will be discussed below, all four are connected to Defendant Valentine. Plaintiffs also seek discovery over "which entities in Defendant Valentine's web should be named as defendants in order for Formula One to obtain redress for the widespread infringement of its valuable trademark rights." (Mot. for Jurisd. Disc. at 14.)

The Court must decide whether Plaintiffs have shown the possible existence of requisite contacts between each of these Defendants and New Jersey to entitle them to jurisdictional discovery. From the documents submitted by both parties, the Court notes that the main alleged site of infringing activity in New Jersey appears to be New Jersey Motorsports Park, a motorsports and entertainment park in Millville, New Jersey. The park included a kart-racing facility called the "F1 New Jersey" with the following logo:



"F1 New Jersey, LLC" was named as an original defendant but they have since settled with Plaintiffs, and the name of the racetrack has since been changed.[7]

Plaintiffs have submitted a wide variety of information to demonstrate Defendants' New Jersey contacts, but many of their factual allegations focus on each Defendant's involvement with, promotion of, or connection to New Jersey Motorsports Park and F1 New Jersey.

In their motion and related submissions, Plaintiffs assert the following contacts for each of the Defendants:[8]

### 1. Richard J. Valentine d/b/a "MBA Group"

The Court notes at the outset that Defendants did not contest this Court's jurisdiction over Valentine in their motion to dismiss. (Mot. to Dismiss [Docket Item 22] at 9 n.9; Mot. for Jurisd. Disc. at 14.) Plaintiffs, however, seek discovery to

---

[7] The "F1 New Jersey" has since been renamed the Tempest Raceway Complex. (Pearson Decl. ¶ 34.)

[8] The Court acknowledges Defendants' objections [Docket Item 46] to the filing of a reply brief containing new allegations, without leave of Court, in violation of Loc. Civ. R. 37.1(b)(3). Nevertheless, to promote efficient adjudication of this suit and limit the waste of judicial resources, the Court is inclined to decide this motion on the fullest record before it. Accordingly, the Court will grant Plaintiffs' request for a reply [Docket Item 47] nunc pro tunc and consider the arguments and allegations contained therein. Plaintiffs are admonished to review the Local Rules and adhere to them in future filings before this Court.

find additional businesses in "Valentine's web" that could be named as defendants.

Valentine is a professional race car driver and entrepreneur and is a resident of Massachusetts with his primary business office in that state. He used to own a Massachusetts-based company called The MBA Group, LLC that focused on investing in startup companies; that company was dissolved in 2012. Valentine has owned and continues to own a variety of companies which provide services and goods in different areas, and uses the name "MBA Group" from time to time as an informal trade name to refer to his various business enterprises. Unlike The MBA Group, LLC, the informal trade name "MBA Group" is not a legal entity. (Valentine Cert. in Supp. of Mot. to Dismiss ("Valentine Cert.") [Docket Item 22-2] ¶¶ 5-7.) The "MBA Group" website and Valentine's personal website together list the four entity Defendants that are the subject of this motion among their "Companies and Partners" or "Current Business Ventures." (Pearson Decl. in Supp. of Mot. for Jurisd. Disc. [Docket Item 33] ¶¶ 8-9 & Exs. A & B.)

Valentine and three partners built and opened New Jersey Motorsports Park in Millville, New Jersey. The park is promoted on the website <www.njmp.com>. (Valentine Cert. ¶ 29; Pearson Decl. ¶ 11.)

Valentine asserts that he is the co-manager of an unidentified entity that holds a minority interest in New Jersey Motorsport Park LLC, which manages the park. He asserts that his co-investors run the business and his involvement "is only with major decisions." (Valentine Cert. ¶ 11; Pearson Decl. ¶¶ 9-11.)[9]

  2.  Karting America LLC ("Karting America"), d/b/a "F1 Boston"

Karting America is a limited liability company organized under the laws of Massachusetts and operates under the name "F1 Boston" with the following logo:



(Valentine Cert. ¶ 13; Am. Compl. ¶ 14.) Valentine holds a 13.5% membership interest in Karting America, and, as noted below, Defendant Kart Management, whose sole partner is Valentine, holds a majority ownership. (Valentine Cert. ¶¶ 15, 31.)

Karting America has no physical presence in New Jersey. It operates F1 Boston, a go-kart racetrack and conference center in

---

[9] In addition, Valentine is an investor in two limited liability companies (F1 Air Group, LLC and F1 Air Logistics, LLC) with some ties to New Jersey that allegedly conducted infringing activities. One is registered to do business in New Jersey and owned a jet which was parked in New Jersey for periods of time. The second LLC has as its investor a New Jersey-based money management firm. (Valentine Cert. to First Mot. to Dismiss [Docket Item 11-1] ¶¶ 23, 25; Pearson Decl. ¶ 15 & Ex. E.) Both LLCs were named as defendants in the Amended Complaint but have since been dismissed. [See Docket Item 28.]

Braintree, Massachusetts. Nearly all of F1 Boston's customers are from Massachusetts. The company does not offer goods or services for sale in New Jersey, nor does it advertise in New Jersey. (Id. ¶¶ 16-17, 19.)

Karting America owns the website <f1boston.com>, which promotes its F1 Boston racetrack and conference center. Although parties may submit information regarding reservations, customers cannot book an event or make a reservation using the website. The website sells gift cards to the F1 Boston facility, but customers cannot otherwise purchase goods or services through the website. (Valentine Cert. ¶¶ 22-25 & Ex. A; Pearson Decl. ¶ 24 & Ex. I.)

Plaintiffs offer the following facts to demonstrate that Karting America's contacts with New Jersey:

- Karting America sold a few go-karts and karting parts to NJ Motorsports in 2012, which constituted less than 0.25% of Karting America's total annual revenue. (Valentine Cert. ¶ 18.)

- The "Sponsors and Partners" page of F1 Boston's website contains links to other sites, including to New Jersey Motorsports Park. (Pearson Ex. I.)

- Out-of-state visitors, including people from New Jersey, have patronized the F1 Boston racetrack. (Pearson Decl. ¶ 27 & Ex. L.)

- F1 Boston's Facebook page promoted New Jersey Motorsports Park in a post from December 2013. (Pearson Ex. K.)

- Karting America is the domain name registrant for <f1newjersey.com>, which was previously used to promote New

10

Jersey Motorsports Park but now no longer directs to any content. (Valentine Cert. ¶¶ 21, 29; Pearson Decl. ¶ 20 & Ex. F.)

- According to a press release from November 2004, F1 Boston had planned to open a kart-racing track at the Xanadu Entertainment Complex at the Meadowlands New Jersey. There is no indication that this track was completed. (Pearson Decl. ¶ 21 & Ex. G.)

- In another press release from February 2008, New Jersey Motorsport Park announced a "partnership with RJ Valentine and his F1 Boston group to create F1 New Jersey," the kart-racing facility that is part of New Jersey Motorsport Park. (Pearson Decl. ¶ 22 & Ex. H.)

- Valentine drove a race car with the F1 Boston logo on it at New Jersey Motorsports Park. (Pearson Reply Decl. ¶ 3 & Ex. A.)

### 3. <u>Kart Management Group, LLP ("Kart Management")</u>

Kart Management is a Massachusetts company headquartered in Braintree, Massachusetts. It has no physical presence in New Jersey, nor does it conduct any business in New Jersey. It does not offer goods or services for sale in the state. (Valentine Cert. ¶¶ 31-33, 37.) Valentine is identified as the company's sole partner in the Massachusetts business entity database. (Pearson Decl. ¶ 29 & Ex. M.)

Kart Management owns a majority interest in Karting America d/b/a F1 Boston (Valentine Cert. ¶ 15), and F1 Boston's website notes Kart Management Group is responsible for "all aspects of the management of F1 Boston," "including operations, sales,

11

advertising, marketing, and financial controls." (Pearson Reply Decl. ¶ 6 & Ex. B.)

    4. <u>RJV Enterprises LLC ("RJV"), d/b/a "F1 Hospitality"</u>

RJV Enterprises is a Massachusetts-based limited liability company with the primary business of selling go-karts and go-kart parts imported from Italy and Germany. Valentine is the majority owner and manager of RJV. (Valentine Cert. ¶¶ 34, 36; Pearson Decl. ¶ 31 & Ex. M.) Less than 5% of its go-kart and equipment sales are to karting facilities in New Jersey. (Valentine Cert. ¶¶ 37-40.)

Defendants allege that RJV has no physical presence in New Jersey and does not advertise in New Jersey. Plaintiffs attach an April 2010 article from what appears to be a kart-racing news website reporting that RJV's businesses include New Jersey Motorsport Park, F1 Boston, and F1 Outdoors, and a business called RIMO USA, which imports and distributes race karts. RIMO's website, in turn, contains links to several "F1" businesses, including F1 Outdoors and the racetrack at New Jersey Motorsports Park. (Pearson Reply Cert. ¶¶ 7-8 & Exs. C & D.)

One of RJV's three divisions operates under the name "F1 Hospitality" with the following logo:



F1 Hospitality leases a hospitality trailer for use at sporting and entertainment events, and Plaintiffs allege it has been booked for events at New Jersey Motorsport Park and other venues in New Jersey. (Pearson Decl. ¶ 30; Valentine Cert. ¶ 35.) F1 Hospitality also had a website on which it advertised its services, which was registered to Valentine's now-dissolved company. (Valentine Cert. ¶ 6; Pearson Decl. ¶¶ 30-31 & Ex. F.)

     5. <u>New England Kart Raceway, Inc. ("NE Kart Raceway"), d/b/a "F1 Outdoors"</u>

NE Kart Raceway is incorporated under the laws of Massachusetts with Valentine as its principal shareholder. (Valentine Cert. ¶ 41; Pearson Decl. ¶ 33.) It does business under the "F1 Outdoors" name and the following logo:



The company has no physical presence in New Jersey. It does not advertise in New Jersey or offer goods or services for sale in the state. (Valentine Cert. ¶¶ 43-46.)

NE Kart Raceway operates F1 Outdoors, a go-kart racetrack in East Bridgewater, Massachusetts, which attracts primarily Massachusetts residents but has also attracted out-of-state

visitors, including visitors from New Jersey. (Pearson Decl. ¶
35.) In 2013, a series of kart races called the RMAX Challenge
was held at five kart-racing sites in different states. The
kart-racing sites in the "circuit" included the one in New
Jersey and F1 Outdoors, and Plaintiffs assert that the race at
F1 Outdoors attracted participants and observers from New
Jersey. (Pearson Decl. ¶ 34 & Ex. O.)

Similar to F1 Boston's website, the F1 Outdoors website is
used to promote and provide information about its racetrack, but
does not sell goods or services. Customers cannot book an event
or make a reservation through the website but can submit
information for booking. (Valentine Cert. ¶¶ 48-51; Pearson
Decl. ¶ 34; Pearson Ex. O.)

*  *  *

Plaintiffs also note that F1 Boston, F1 Outdoors, and New
Jersey Motorsports Park all identify each other as sponsors or
affiliates on their websites, or provide links to the other's
site. F1 Boston's website also identifies F1 Hospitality as a
sponsor and partner. (Pearson Decl. ¶¶ 24, 25, 32-34 & Exs. I,
J, & O.)

   6. <u>John Doe Companies I-III</u>

In his certification in connection with Defendants' motion
to dismiss, Valentine asserted that he "is the co-manager of a

New Jersey entity that has a minority interest in NJ
Motorsport." (Valentine Cert. ¶ 11.) In an earlier certification
filed with the Court, Valentine stated that he owned interest in
two separate companies that have a combined 21% interest in New
Jersey Motorsports Park, LLC. (Valentine Cert. to First Mot. to
Dismiss [Docket Item 11-1] ¶¶ 12, 32.) Plaintiffs assert that
counsel for Defendants have refused to identify these entities,
which Plaintiffs have dubbed John Doe Companies I, II, and III,
by name. (Pearson Decl. ¶ 17.)

**III. LEGAL STANDARD**

Although the plaintiff bears the burden of demonstrating
sufficient contacts between the defendant and the forum state to
support the exercise of personal jurisdiction, Pinker v. Roche
Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002), courts are to
assist the plaintiff by allowing jurisdictional discovery unless
the plaintiff's claim is "clearly frivolous." Mass. Sch. of Law
at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir.
1997). Jurisdictional discovery should be sustained when the
plaintiff presents factual allegations that suggest with
"reasonable particularity" the possible existence of requisite
contacts between the defendant and the forum state. Toys "R" Us,
Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003); Mellon

Bank (East) PSFS, Natl Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

Thus, courts in this Circuit have permitted jurisdictional discovery where the jurisdictional facts "remain in dispute," Flagship Interval Owner's Ass'n, Inc. v. Phila. Furniture Mfg. Co., No. 09-1173, 2010 WL 1135736, at *2, 7 (D.N.J. Mar. 22, 2010) (Simandle, J.); where the request for jurisdictional discovery is "critical to the determination of whether [the court can] exercise personal jurisdiction over the defendant," W. Afr. Trading & Shipping Co. v. London Int'l Grp., 968 F. Supp. 996, 1001 (D.N.J. 1997); and where the plaintiff has provided "at least some evidence" that a defendant "has had some contact" with the forum, state. Cosa Marble, Inc. v. Classic Tile, Inc., No. 07-587, 2008 WL 320465, at *3 (D.N.J. Jan. 28, 2008).

Ultimately, to meet its burden on a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the plaintiff must proffer evidence of jurisdiction through sworn affidavits or other competent documents. See Metcalfe v. Rennaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 257 (3d Cir. 1998); In re Nazi Era Cases Against Ger. Defendants Litig., 320 F. Supp. 2d 204, 214-15 (D.N.J. 2004).

IV.   DISCUSSION

A. Personal Jurisdiction Generally

The personal jurisdiction inquiry traditionally requires an examination of whether its exercise over a defendant is permissible under both the state's long-arm statute and the Due Process Clause of the Constitution. But if the state's personal jurisdiction statute permits the exercise of jurisdiction to the fullest limits of due process, as is the case here, the two jurisdictional inquiries in this case collapse into one: whether the exercise of jurisdiction comports with due process. Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981).

As has often been repeated, the Due Process Clause of the Constitution permits the exercise of personal jurisdiction when there are "minimum contacts" between a non-resident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." J. McIntyre Machinery, Ltd. V. Nicastro, 131 S. Ct. 2780, 2787 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A court may exercise either general jurisdiction or specific jurisdiction over a defendant as long as it is consistent with that principle. General jurisdiction

17

may be asserted over a foreign corporation even when the cause of action has no relation to those contacts if the defendant's contacts with the forum are so "continuous and systematic" as to render them essentially "at home" in the forum state. Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). If an out-of-state defendant's contacts with the forum are insufficiently substantial to establish general jurisdiction, a court may still assert specific jurisdiction if the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros, 466 U.S. at 414, n.8. The inquiry here becomes whether the defendant has "purposefully directed" his activities at residents in the forum state, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985), or whether there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

**B. Limited Discovery will be Granted to Determine the Nature and Scope of NE Kart Raceway, RJV, and Karting America's Connections with New Jersey, and to Identify the John Doe Companies**

Because the Federal Rules and this Circuit permit liberal discovery of jurisdictional facts which are relevant and not privileged, see Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1041 (3d Cir. 1997), the Court begins with a presumption in favor of allowing discovery to establish personal jurisdiction.

### 1. Karting America

Plaintiffs have proffered at least some evidence that Karting America d/b/a F1 Boston, though based out of Massachusetts, has some connections to New Jersey, but it falls well below the requisite threshold for establishing general jurisdiction. Plaintiffs note that Karting America sold some go-karts and karting parts to New Jersey in 2012, although Defendants certified that those sales constituted less than 0.25% of its total annual revenue. Plaintiffs have also provided evidence that F1 Boston attracts at least *some* visitors from New Jersey, and may, through its website, sell goods to New Jersey residents in the form of gift cards for use at the F1 Boston racetrack. Additionally, at one point 10 years ago, F1 Boston had planned to open a kart-racing track in New Jersey. On the other hand, Defendants have averred through a sworn

19

certification that Karting America otherwise does not transact
business in New Jersey, does not offer goods or services for
sale in New Jersey, and has no employees, officers, or records
in the state. These facts are not disputed by Plaintiffs, nor
have they suggested that Karting America has a physical presence
in the state. Given the high threshold of business activity that
is now required under the recent Supreme Court case Daimler AG
v. Bauman, 134 S. Ct. 746 (2014),[10] the alleged contacts are
plainly insufficient to find general jurisdiction over Karting
America. 134 S. Ct. at 751 (general jurisdiction is proper over
a foreign corporation "only when the corporation's affiliations
with the State in which suit is brought are so constant and
pervasive 'as to render [it] essentially at home in the forum

_____

[10] In Daimler, the plaintiffs attempted to attribute the
California activities of one of Daimler's subsidiaries,
Mercedez-Benz USA ("MBUSA") to Daimler. MBUSA was incorporated
in Delaware and had its principal place of business in New
Jersey but had several corporate facilities in California and
distributed cars to California. In addition, MBUSA was the
largest supplier of luxury vehicles to the California market,
and annual sales of Daimler vehicles in California amounted to
2.4% of Daimler's global sales, or about $4.6 billion. Id. at
752. Nonetheless, the Supreme Court held that even these
contacts, assuming they could be attributed to Daimler, would be
insufficient to subject Daimler to general jurisdiction in
California, explaining that it was not enough that a corporation
engage in "substantial, continuous, and systematic" business in
a state, because that would allow corporations to be subject to
suit in every state in which they did substantial business. Id.
at 761. The Court went on to note that in all but the most
"exceptional case," a corporation is "at home" in only two
places: its place of incorporation and its principal place of
business. Id. at 760-61 & n.19.

20

State.'" (quoting <u>Goodyear Dunlop Tires Operations, S.A. v.</u> <u>Brown</u>, 131 S. Ct. 2846, 2851 (2011))).[11]

Nonetheless, the Court will permit limited discovery because some of Plaintiffs' allegations suggest that specific jurisdiction may exist. First, the 2008 press release submitted by Plaintiffs appears to suggest that a company known as the "F1 Boston Group" partnered with Valentine in the creation of the F1 New Jersey kart-racing facility at New Jersey Motorsports Park. In his certification, Valentine also noted that he built New Jersey Motorsports Park along with three partners, but did not identify the names of his partners. The name "F1 Boston Group" is similar to "F1 Boston," and discovery may reveal that the two entities are one and the same, or that "F1 Boston Group" is a d/b/a of Karting America. If that turns out to be the case, then

---

[11] Plaintiffs have not alleged, nor is there any shred of evidence, that any of the entity Defendants are registered to do business in New Jersey, which may subject them to jurisdiction in the state. <u>See</u>, <u>e.g.</u>, <u>Bane v. Netlink, Inc.</u>, 925 F.2d 637, 640 (3d Cir. 1991) (Pennsylvania statute establishing jurisdiction over any foreign corporation that registers to do business in the state "carries with it consent to be sued in Pennsylvania courts"); <u>Otsuka Pharmaceuticals Co., Ltd. v.</u> <u>Mylan, Inc.</u>, Civ. No. 14-4508, ___ F. Supp. 3d _____, 2015 WL 13-5764, at *12 (D.N.J. Mar. 23, 2015) (registration to do business in New Jersey, even absent service upon a corporate agent in New Jersey, suffices to confer personal jurisdiction where the corporate defendant was also availing itself of the privilege of doing business in New Jersey); <u>Sadler v. Hallsmith</u> <u>SYSCO Food Serv.</u>, 2009 WL 1096309 (D.N.J. Apr. 21, 2009) (defendant consented to being sued in New Jersey by conceding that it was registered to do business in New Jersey and had a registered agent in the state for service of process).

Karting America, through its involvement in New Jersey
Motorsports Park and the F1 New Jersey racing facility, will
likely be subject to specific jurisdiction in New Jersey.

Second, Plaintiffs have submitted evidence of cross-
promotion between the Defendant entities. The evidence of cross-
promotion between each Defendant and New Jersey Motorsports Park
is particularly relevant. F1 Boston's website identifies New
Jersey Motorsports Park as a sponsor and it promoted New Jersey
Motorsports Park in a single Facebook post. While this still
falls short of demonstrating that Defendant had "continuous and
systematic contacts" with New Jersey, it does suggest that F1
Boston exploited the "F1" brand and marks by encouraging
visitors who were familiar with F1 Boston to patronize the F1
New Jersey in Millville. Plaintiffs have, in other words,
provided facts implying that Defendant F1 Boston purposefully
directed some activity to New Jersey that supported the
infringing entity in the state, causing injury to Plaintiffs.
Additionally, the evidence of cross-promotion between the entity
Defendants and New Jersey Motorsports Park may point to the
existence of an underlying contract between the parties to
promote each other's go-kart facilities. Such a contract would
indicate that F1 Boston "deliberate[ly] target[ed] [] the forum"
by promoting F1 Boston with New Jersey residents visiting New
Jersey Motorsports Park, and would support a finding of specific

22

jurisdiction. See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 10103 (3d Cir. 2009) (quoting O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007)).[12]

Accordingly, because Plaintiffs have provided some evidence to suggest that specific jurisdiction may be established, the Court will permit discovery to determine whether Karting America has contacts with New Jersey specific to the cause of action in this case. In particular, discovery should be related to (1) the nature and scope of Karting America's connection and involvement with "F1 Boston Group" and with New Jersey Motorsport Park; (2) the existence of any contracts or agreements between Karting America d/b/a F1 Boston and New Jersey Motorsports Park to advertise its services and products, and (3) the extent of cross-promotion between the Defendants. If discovery within these identified fields leads to the prompt identification of other limited discovery reasonably needed for a fair

---

[12] The fact that some New Jersey residents have visited F1 Boston does not by itself support specific jurisdiction, since contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself. See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007); Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 542-43 (3d Cir. 1985) (fact that some students at a school are residents of Pennsylvania does not automatically subject the school to suit in Pennsylvania). It is F1 Boston's purposeful *promotion* of its go-kart facilities with New Jersey residents that could render them subject to suit in New Jersey.

determination of specific jurisdiction, that too may be
permitted.

### 2. NE Kart Raceway

For many of the same reasons, the Court will also permit
limited discovery into NE Kart Raceway d/b/a "F1 Outdoors"
relevant to establishing specific jurisdiction. A broader
inquiry is not required because Plaintiffs have not shown with
"reasonable particularity" the possibility of finding enough
contacts to subject F1 Outdoors to general jurisdiction.

Like Karting America, NE Kart Raceway's business is
operating a go-kart facility in Massachusetts. It does not sell
products or services directly in New Jersey, does not have
employees, officers, or business records in the state, and does
not solicit business in the state. It is likely that F1 Outdoors
has attracted at least some visitors from New Jersey over the
past few years through their participation in 2013 in the five-
state RMAX Challenge. Without more, these allegations do not
come close to showing general jurisdiction.

The Court cannot, however, rule out the possibility of
specific jurisdiction, because Plaintiffs have pointed to facts
which at least cast *some* doubt on Defendants' statement that F1
Outdoors does not advertise or promote its business in New
Jersey. The fact that Defendant's website advertised F1 Outdoors

as a race site in the RMAX Challenge (and noted the location of
other race sites) suggests that it may have promoted or
encouraged attendance at races at the other Challenge locations,
including at F1 New Jersey. F1 Outdoors' website also provided a
link to the website of New Jersey Motorsports Park, and in turn,
the New Jersey Motorsports Park website linked to F1 Outdoors.
As noted above, such cross-promotion could suggest an underlying
agreement between the parties to promote each other's
businesses. Discovery may reveal that F1 Outdoors purposefully
directed business towards F1 New Jersey, or targeted
advertisements for F1 Outdoors at New Jersey residents, either
directly or through an agreement with New Jersey Motorsports
Park.

Because Plaintiffs have shown that discovery would not be
frivolous, the Court will permit limited discovery for purposes
of determining whether the Court may exercise specific
jurisdiction over NE Kart Raceway. In particular, discovery will
be permitted to examine (1) the existence of any contracts or
agreements between NE Kart Raceway d/b/a F1 Outdoors and New
Jersey Motorsports Park to advertise its services and products,
and (2) the extent of cross-promotion between the parties.
Additional discovery beyond the scope of these fields may be
permitted at the Court's discretion if this discovery leads to

areas for reasonable follow-up if likely to be probative of specific jurisdiction.

### 3. RJV Enterprises

The Court will also permit limited discovery into RJV Enterprises d/b/a "F1 Hospitality" for purposes of establishing specific jurisdiction.[13] The F1 Hospitality division of RJV provides a hospitality trailer bearing the allegedly infringing "F1" logo, services, and equipment to customers at sporting or entertainment events. Plaintiffs allege, upon information and belief, that the trailer has been used for events in New Jersey, including at the F1 New Jersey racetrack. Given that Valentine, who holds interests in F1 Boston, F1 New Jersey, and F1 Outdoors, is also RJV's majority owner and manager, Plaintiff's

---

[13] Defendants have asserted by sworn declaration that it has no presence in New Jersey and does not advertise in the state, and that RJV's go-kart and equipment sales in New Jersey make up less than 5% of its total sales. Plaintiffs have not alleged any facts which would place these statements into dispute, nor do they suggest that RJV has other contacts with New Jersey. Thus, discovery will be limited in scope and will be relevant to the question of whether specific jurisdiction may be established. See Daimler, 134 S. Ct. at 760-62 (finding court lacked general jurisdiction in the state even though defendant had multiple in-state facilities, distributed products for sale in the state, and sold over 10% of its U.S. products in the state); Goodyear, 131 S. Ct. at 2852 (finding court lacked general jurisdiction where defendant's products were distributed to forum state but defendant had no office, employees, or bank accounts in the state, was not registered to do business in the state, did not solicit business or advertise in the state, and did not themselves sell products in the state).

allegation that events at these "F1" venues use F1 Hospitality's services is certainly plausible.

Plaintiffs have been unable to allege more because Defendants have provided virtually no information on F1 Hospitality or its services. With respect to F1 Hospitality, Valentine's certification asserts only that "One of RJV's three business divisions does business as 'F1 Hospitality,' and its business is leasing out of Massachusetts a hospitality trailer for customers to use at entertainment events, used by customers anywhere they wish to entertain." (Valentine Cert. ¶ 35.) Defendants do not state how much of F1 Hospitality's revenue may be attributed to customers in New Jersey, whether F1 Hospitality purposefully solicits business in the state, or whether RJV had knowledge that its trailer with the allegedly infringing logo was being used for these commercial purposes in New Jersey. Valentine's certification discusses only RJV and its contacts, even though Plaintiffs' claim of infringement is directed towards use of the "F1 Hospitality" mark on trailers provided by F1 Hospitality.

An inquiry into F1 Hospitality and its specific contacts with New Jersey is critical to determining whether this Court has specific jurisdiction over RJV. In order to meet Defendants' jurisdictional challenge under Fed. R. Civ. P. 12(b)(2), Plaintiffs must provide affidavits or other competent evidence

to establish the existence of jurisdiction. See, e.g., Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984). Here, the facts which would establish personal jurisdiction over RJV are in the exclusive control of Defendants, and they have provided little information to Plaintiffs.

In addition, Plaintiffs have produced a news article reporting that New Jersey Motorsports Park is one of RJV's businesses, suggesting that RJV may have a financial stake in the operation of New Jersey Motorsport Park and the F1 New Jersey racetrack. Such a finding would almost certainly support the exercise of specific jurisdiction over RJV.

"When the fish is identified, and the question is whether it is in the pond, we know no reason to deny a plaintiff the customary license." Compagnie des Bauxites de Guinee v. L'Union, 723 F.2d 357, 362 (3d Cir. 1983) (quoting Surpitski v. Hughes-Keenan Corp., 362 F.2d 254, 255-56 (1st Cir. 1966)). Accordingly, the Court will grant jurisdictional discovery to determine whether the Court may exercise specific jurisdiction over RJV. Discovery should focus on (1) the nature and extent of F1 Hospitality's contracts and sales of "F1 Hospitality"-branded products and services within New Jersey; (2) the existence of any contracts or agreements between F1 Hospitality and New Jersey Motorsports Park to advertise its services and products,

28

and the extent of cross-promotion between the parties; and (3) the nature and extent of RJV's connection and involvement with New Jersey Motorsport Park. Additional discovery beyond the scope of these fields may be permitted at the Court's discretion if this discovery leads to areas for reasonable follow-up if likely to be probative of specific jurisdiction.

### 4. John Doe Companies I-III

Finally, the Court will grant jurisdictional discovery to identify the names of the John Doe Defendants. Since Plaintiffs assert that these defendants are entities that co-manage or have an interest in New Jersey Motorsports Park, their connection to New Jersey and the infringing acts in particular is plain. Furthermore, Plaintiffs have asserted that they have requested the names of these entities from Defendants, but Defendants have so far refused to provide this information. Contrary to Defendants' contention, permitting Plaintiffs to merely learn the names of these entities will not unduly burden the Court's and parties' time and resources. Rather, what burdens the Court's time and the parties' resources is the cat-and-mouse game in which Defendants have not disclosed those names of plainly relevant entities. The Court will therefore order discovery to identify these entities.

\*\*\*

The Court will exert personal jurisdiction over the above Defendants to the extent necessary to require them to provide this limited specific-jurisdiction related discovery. The period for jurisdictional discovery shall be 45 days. Within 7 days thereafter, Plaintiffs may file a letter request to lift the stay on Defendants' motion to dismiss along with serving an opposition to Defendants' motion. Defendants' reply will be due 7 days thereafter.

### C. Jurisdictional Discovery will be Denied with respect to Kart Management.

Plaintiffs have not shown with reasonable particularity that Kart Management may be subject to jurisdiction in New Jersey. Defendants have stated that Kart Management does not have a presence in New Jersey, does not conduct business in New Jersey, and does not offer goods or services for sale in the state. Although Plaintiffs note that Kart Management owns a majority interest in Karting America and is responsible for the management of F1 Boston, that activity does not establish Kart Management's contacts with New Jersey.

Discovery will not be granted as a matter of course simply because a plaintiff has named a particular party as a defendant. The Court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum. Here, the record is devoid of any evidence that Kart Management

has even a single direct connection with the forum state.

Accordingly, the Court will deny jurisdictional discovery.[14]

### D. Because Valentine Does Not Contest Jurisdiction, Jurisdictional Discovery to Determine Valentine's Other Connections to New Jersey will be Denied

Plaintiffs seek to propound discovery on Valentine to find out "which entities in Defendant Valentine's web should be named as defendants in order for Formula One to obtain redress for the widespread infringement of its valuable trademark rights." (Mot. for Jurisd. Disc. at 14.) Plaintiffs make no attempt to identify how many additional entities there might be or the scope of their business, nor do they make a plausible suggestion that these unknown businesses have some connection to New Jersey. Indeed, the very purpose of Plaintiffs' request, in their own

---

[14] Plaintiffs note that Valentine is listed as Kart Management's sole partner. They have also pointed out that Valentine owns a stake in each of the named entity Defendants. To the extent Plaintiffs imply that jurisdiction may be found because Valentine has a financial interest in the each of the entity Defendants and he himself is subject to jurisdiction in this state, that argument must be rejected. "[P]ersonal jurisdiction over an LLC member should not be extended to the LLC based upon the member's unrelated contacts." King v. Hawgwild Air, LLC, No. 08-0153, 2008 WL 2620099, at *5 (N .D. Tex. June 27, 2008); see also Omnicare Pharmacies of Pa. W., LLC. v. Latrobe Health LLC, No. 12-761, 2013 WL 1102878, at *5 n.10 (W.D. Pa. Mar. 15, 2013); Mountain Funding, LLC v. Blackwater Crossing, LLC, No. 05-513, 2006 WL 1582403, at *3 (W.D.N.C. June 5, 2006) ("[T]he practice of disregarding a limited liability company as an entity and looking to the citizenship of its members is only used to determine whether a court has diversity for subject matter jurisdiction. . . . This principle has not been applied to personal jurisdiction, which presents distinct due process issues.").

words, is to find additional potential defendants that they themselves have not even identified or thought of. It is therefore clear that speculation, and not any concrete factual allegations suggesting the existence of jurisdiction, forms the basis for their request.

The Court finds no reason to permit a thinly-veiled fishing expedition into all of Valentine's companies and business interests. Plaintiffs have not demonstrated that they have met the requirement for jurisdictional discovery, as they have not shown with any "reasonable particularity" that Valentine owns other companies, not yet known to Plaintiffs, that are infringing on the Formula One Marks and that have sufficient ties to New Jersey. More importantly, aside from John Doe Companies I-III, whose identities are already subject to discovery, Plaintiffs have not named any other defendants. The Court cannot order jurisdictional discovery to uncover whether parties who are not even named in this suit have New Jersey contacts.

More importantly, as Plaintiffs themselves point out, Valentine has not contested personal jurisdiction in this case. Jurisdictional discovery is intended to clarify and resolve disputes over a defendant's requisite contacts with a state. Here, there is no dispute: because Valentine waived his personal jurisdiction defense, he is subject to suit in New Jersey.

Jurisdictional discovery on Valentine to discover other of his companies would serve no purpose in establishing the Court's jurisdiction over him. In denying discovery, the Court does not rule out that Valentine may be required to provide information in connection with jurisdictional discovery over other entity Defendants discussed above.

**V.   CONCLUSION**

Jurisdictional discovery will be permitted with respect to Karting America, NE Kart Raceway, and RJV Enterprises to determine whether the Court may establish specific jurisdiction over these Defendants. Jurisdictional discovery will also be permitted to determine the identities of the several unnamed John Doe defendant entities that own interests in New Jersey Motorsports Park, which Plaintiffs have captioned "John Doe Companies I-III." Jurisdictional discovery will be denied with respect to Kart Management and Richard Valentine.

Plaintiffs' Proposed Interrogatories and Requests for the Production of Documents [Docket Item 32] shall be revised to confine to the issues noted in this Opinion and the Court's accompanying Order. Defendants' time to respond will be expedited to 14 days. The period for jurisdictional discovery shall be 45 days. Within 7 days thereafter, Plaintiffs may file a letter request to lift the stay on Defendants' motion to

dismiss along with an opposition to Defendants' motion.

Defendants' reply will be due 7 days thereafter.


**December 22, 2015**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge