IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

FORMULA ONE LICENSING BV and
FORMULA ONE WORLD CHAMPIONSHIP
LIMITED,

                Plaintiffs,

     v.

RICHARD J. VALENTINE,
INDIVIDUALLY AND DOING
BUSINESS AS MBA GROUP, JOHN
DOE COMPANY I; JOHN DOE
COMPANY II; JOHN DOE COMPANY
III; KARTING AMERICA LLC; KART
MANAGEMENT GROUP, LLP; RJV
ENTERPRISES, LLC; AND NEW
ENGLAND KART RACEWAY, INC.,

                Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 14-5812 (JBS/AMD)

**OPINION**

---

APPEARANCES:

Frederick Lee Whitmer, Esq.
KILPATRICK TOWNSEND & STOCKTON LLP
1114 Avenue of the Americas, 21st Floor
New York, NY 10036
    Attorney for Plaintiff

Michael James Geraghty, Esq.
Trent S. Dickey, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102
    Attorneys for Defendants

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

This matter is before the Court on the motion of Defendants Richard Valentine, individually and doing business as MBA Group, Karting America LLC, and New England Kart Raceway, Inc. ("Defendants") to dismiss Plaintiffs Formula One Licensing BV and Formula One Championship Limited's ("Plaintiffs") Amended Complaint for lack of personal jurisdiction over Defendants MBA Group, Karting America LLC, and New England Kart Raceway (the "Corporate Defendants"), and/or dismiss the case against all Defendants because the District of New Jersey is an inconvenient forum to litigate this dispute based on the doctrine of forum non conveniens. [Docket Item 22.] Defendants further move, in the alternative, that this Court transfer the action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404.  In addition, Mr. Valentine moves for extension of time to answer the Amended Complaint pending resolution of this instant motion. [Docket Item 22 at 27.] For the reasons set forth below the Court will deny the motion to dismiss and decline to transfer venue. The Court will permit Mr. Valentine an extension of time to answer the Complaint.

## II.   BACKGROUND

### A. Factual Background

Plaintiffs allege that that the Corporate Defendants violated and continue to violate Formula One's trademark rights

and fostered consumer confusion by creating an unauthorized F1 family of marks to identify their kart racing and other businesses, expanding their infringing F1 brand into New Jersey, promoting an infringing F1 racetrack in New Jersey, specifically, the New Jersey Motorsports Park ("NJMP") and advertising their infringing F1 family of marks in New Jersey and on websites targeted to residents of New Jersey. (Am. Compl., Docket Item 18, ¶¶2-5, 11-15, 20-21, 24, 52-108.)

NJMP owns a 700 acre go-karting facility in Millville, New Jersey named "F1 New Jersey." (Deal Decl. ¶ 26-27.) The discovery record reveals that NJMP has a mutually beneficial relationship with Mr. Valentine and the Corporate Defendants, ranging from buying used go-karts from Karting America, using the domain name f1newjersey.com owned by Karting America before NJMP even existed, and purchasing engines, parts, apparel, graphic design and mechanical services from the Corporate Defendants. (KQ Exs. 48-49; 117:14-150:8; RJV Ex. 35.) Mr. Valentine owns a one third share in a villa on the premises of NJMP which NJMP rents out and gives to Mr. Valentine partial proceeds from the rental income. (Deal Decl. ¶ 53, Ex. 33.) The Court's subsequent discussion of personal jurisdiction delves deeper into the record to highlight the full extent of the co-dependent relationship between NJMP, Mr. Valentine, and the Corporate Defendants.

Karting America LLC ("Karting America") is a Massachusetts company doing business as "F1Boston," which operates a go-kart racetrack and conference center in Braintree, Massachusetts. (Valentine Cert. ¶ 13.) The F1 Boston racetrack was opened in 1999. (Id. at ¶ 14.) In 2009, Plaintiffs sent Karting America a cease and desist letter addressed to Karting America's business address in Braintree, Massachusetts, alleging that Karting America's use of "F1" violated their rights. (Id. at ¶ 30.) Plaintiffs took no further action until filing their first Complaint in this action in 2014. (Id.) Kart Management Group is responsible for all aspects of the management of Karting America and F1 Boston, including operations, sales, advertising, marketing, and financials. (Valentine Dep. 23:9-24; RJV Ex. 2.)

New England Kart Raceway, Inc. ("New England") is a Massachusetts company doing business as "F1 Outdoors," which owns a go-kart racetrack called F1 Outdoors in East Bridgewater, Massachusetts since 2002. (Valentine Cert. ¶ 42.)

Mr. Valentine is a professional racecar driver and entrepreneur. (Valentine Cert.¶ 5.) He lives in Massachusetts and maintains his primary business in Braintree, Massachusetts. (Id. at ¶ 9.) Mr. Valentine claims he owns partial and majority interests in each of the Corporate Defendants remaining in this case, but evidence from jurisdictional discovery reveals that he is more likely the sole founder and owner of all the Corporate

4

Defendants, most specifically, Karting America d/b/a F1 Boston
and New England d/b/a/ F1 Outdoors. The Corporate Defendants
each assert that they are separate, autonomous entities, but the
record reflects otherwise. In reality, and despite Defendants'
contentions to the contrary, the evidence reveals there is
little separation between the three corporate Defendants. The
record reflects the following evidence suggesting Karting
America and New England are essentially the same entity, under
the control of Mr. Valentine:

1. **Mr. Valentine controls both Karting America and New
   England.** Mr. Valentine is authorized to make decisions on
   behalf of each of the Corporate Defendants without any
   prior approval (Quast Dep. 24:20-21, 28:5-29:4, 30:2-9).
   Throughout the deposition, Mr. Valentine repeatedly
   expressed lack of knowledge concerning the legal structure
   of the interrelated companies and was usually unable to
   recall which specific corporation performed a particular
   act. (Valentine Dep. 9:9-10:8, 13:12-16, 71:5-22, 72:9-24,
   125:3-5, 201:6-204:9, 252:13-253:16, 269:12-270:19.) All of
   the Corporate Defendants are partners within the MBA Group,
   a name under which Mr. Valentine does business. (Valentine
   Dep. 24:15-25:5; Certification in Support of Motion for
   Discovery, ECF No. 33, Ex. A.) A press release invoiced to
   RJV Enterprises specifically states that RJV Enterprises
   businesses include F1Boston and F1Outdoors.

2. **The Corporate Defendants share the same business
   infrastructure.** All three of the Corporate Defendants share
   the same General Manager, Ms. Karen Quast, who is also
   their designated Rule 30(b)(6) witness. They further share
   the same chief financial officer, Peter Lake, and the same
   operations manager, Steve Sweeny (Quast Dep. 26-27. 34:21-
   35:9; Valentine Dep. 25:24-26:2.) The Corporate Defendants
   also shared the same marketing firm to issue press
   releases. (Pl. Ex. 10). The Corporate Defendants list the
   same physical address as their principal office location
   (Quast Dep. 28)

3. **F1 Boston and F1 Outdoors logos are used interchangeably.** Karting America d/b/a F1 Boston gives its customers uniforms with both F1 Outdoors (entity of New England) and F1 Boston logos on them and vice versa. (Powers Decl. Ex. 4.) Uniforms bearing the F1 Outdoors logo are worn by staff members at F1 Boston and there are multiple signs around the lobby at F1 Boston displaying the F1 Outdoors logo. (Id.)

4. **The Corporate Defendants enjoy cross-ownership of each other's domain names.** Karting America owns the domain name f1outdoor.com, mbagroup.com and f1newjersey.com, and MBA Group owns the domain rjvalentine.com (Docket No. 63, Deal Decl. Ex. 9.) Karting America has owned the domain name f1newjersey.com since 2004, years before NJMP even opened in 2008. (Id.; RJV Ex. 6.) The date when Karting America purchased the domain name coincides with the timing of a November 14, 2004 press release by F1Boston announcing plans to open a kart racing facility in New Jersey. (RJV Ex. 6.)

Thus the Court will treat the Corporate Defendants as a single entity and determine jurisdiction over Karting America and New England in a single analysis.

## B. Procedural History

Plaintiffs brought this action alleging (i) trademark infringement under the federal Lanham Trademark Act, 15 U.S.C. §1114(1); (ii) unfair competition, dilution of trademark, and cybersquatting under 15 U.S.C. § 1125 (A), (C), and (D); and (iii) claims of infringement, unfair competition, and deceptive trade practices pursuant to statutory and common law of New Jersey. (Am. Compl. ¶¶ 1, 9-10, 11-12, 80-108.). Specifically, Plaintiffs allege that Mr. Valentine, along with a number of interrelated business entities allegedly owned and managed by

6

Valentine, (those identified as the "Corporate Defendants")
wrongfully exploited the F1 marks for their own commercial
purpose by conducting and advertising kart racing and other
businesses under "F1" names such as "F1 Boston, F1 Outdoors, F1
Hospitality, and F1 Karting New Jersey," and using design marks
which Plaintiffs contend are confusingly similar to those of
Plaintiff. (Am. Compl. ¶¶ 1-5, 9-10, 11-15, 20-21, 24, 52-108.)

Prior to Plaintiffs' filing of their Amended Complaint,
they reached settlement agreements with several named
defendants, leaving the remaining defendants to include Richard
Valentine and the corporate entities Karting America LLC, Kart
Management Group LLP, RJV Enterprises, LLC and New England Kart
Raceway, Inc.

The remaining Defendants filed the present motion to
dismiss for lack of personal jurisdiction and/or based on the
doctrine of forum non conveniens, or in the alternative, to
transfer venue on June 10, 2015. [Docket Item 22.] In response,
Plaintiffs moved for discovery to determine the nature and scope
of the contacts that the moving Defendants – specifically, Kart
Management, Karting America, RJV Enterprises, New England Kart,
and Mr. Valentine – have with the state of New Jersey. In its
December 22, 2015 Opinion the Court determined it had personal
jurisdiction over Mr. Valentine, lacked personal jurisdiction
over Kart Management, and granted Plaintiffs the right to take

7

limited jurisdictional discovery with respect to Karting
America, RJV Enterprises, and New England. [Docket Item 50.] The
Court also permitted jurisdictional discovery to determine the
identities of the several unnamed John Doe defendant entities
that own interests in New Jersey Motorsports Park.[1] Id. The
Defendants have withdrawn their motion to dismiss as to RJV
Enterprises only. (Pl. Ex. 22.) The present issue is thus
whether Defendants Karting America and New England Raceway (the
remaining "Corporate Defendants") are subject to this Court's
jurisdiction, and if they are subject to the Court's
jurisdiction, whether New Jersey is the proper forum for this
litigation.

## III. PERSONAL JURISDICTION

Plaintiffs have satisfied their burden of demonstrating
that Defendants have the requisite minimum contacts with New
Jersey to support a finding of specific jurisdiction. Federal
Rule of Civil Procedure 4(e) allows a district court to assert
personal jurisdiction over a non-resident defendant to the
extent permitted by the law of the state where the district

---

[1] In addition to the moving Corporate Defendants and the
defendants who have already settled with Plaintiffs, the Amended
Complaint listed three unknown entities as defendants: John Doe
Companies I, II, and III. (Amend Compl. ¶ 13.) These entities
have not been identified nor served by Plaintiffs. Therefore
those three entities were not discussed in the present motion,
nor will they be considered in this Court's Opinion today.

court sits. See Fed.R.Civ.P. 4(e). New Jersey law permits the exercise of jurisdiction to the extent allowed by the Constitution, making the current inquiry whether the Court can exercise jurisdiction without offending the Due Process Clause of the Fifth Amendment. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

The Due Process clause requires that Plaintiff establish that the Corporate Defendants have "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945); Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). A plaintiff must establish either that "the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." Mellon Bank (EAST) v. DiVeronica Bros., 983 F.2d 551, 554 (3d Cir. 1993).

In the instant case, Plaintiff argues that this Court has specific jurisdiction over Defendants. To assert specific jurisdiction Plaintiff must establish that (1) Defendants "purposely directed [their] activities at New Jersey; (2) the litigation "arise[s] out of or relate[s] to" at least one of the Defendants' activities in New Jersey; and (3) the exercise of

jurisdiction comports with traditional notions of "fair play and substantial justice." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007); citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)

The plaintiff bears the burden of demonstrating that the defendant's contacts with the forum state are sufficient. Apollo Techs. Corp. v. Centrosphere Indus. Corp., 805 F. Supp. 1157, 1182 (D.N.J. 1992) (citations omitted). To meet its burden on a motion to dismiss under Fed. R. Civ. P. 12(b)(2), a plaintiff must proffer evidence of jurisdiction through sworn affidavits or other competent documents. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); IMO Indus., Inc. v. Keikert AG, 155 F.3d 254, 257 (3d Cir. 1998); In re Nazi Era Cases Against Ger. Defendants Litig., 320 F. Supp. 2d 204, 214-15 (D.N.J. 2004). In deciding whether the plaintiff has satisfied this burden, a court resolves all disputes concerning material facts in the plaintiff's favor. One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 322 (D.N.J. 1997); LaRose v. Sponco Mfg. Inc., 712 F. Supp. 455, 458 (D.N.J. 1989).

This Court agrees with Plaintiffs and finds that they have satisfied their burden of demonstrating that Defendants have the requisite minimum contacts with New Jersey to support a finding of specific jurisdiction. The Court finds the Corporate

10

Defendants purposely targeted New Jersey by: (1) selling goods
and services bearing the allegedly infringing F1 logo to a
racetrack in New Jersey; and (2) supporting NJMP's allegedly
infringing kart racing facility within the state of New Jersey
through cross-promotion. The Court is also persuaded that
because each of these activities involved the allegedly
infringing mark "F1" the Defendants' contacts with New Jersey
adequately relate to Plaintiffs' trademark infringement and
unfair competition claims. Therefore, because there is nothing
to suggest it would violate traditional notions of fair play or
substantial justice, the Court finds it has the power to
exercise personal jurisdiction over the Corporate Defendants.

### 1. Selling Goods & Services in New Jersey

Defendants' shipping of products to New Jersey is conduct
that in and of itself constitutes "purposeful availment" of New
Jersey's market, sufficient to establish minimum contacts for
specific personal jurisdiction. See Columbia Metal Culvert Co.
v. Kaiser Indus. Corp., 526 F.2d 724, 729 (3d Cir. 1975)
(holding that "[a] single shipment is sufficient to subject a
foreign individual or corporation to personal jurisdiction.");
One World Botanicals, 987 F. Supp. at 324 ("defendant's
consummation of a business transaction [where it shipped a
product into New Jersey] bars it from now arguing that it has
not purposefully availed itself of the privilege of doing

11

business in New Jersey,"); see also Spelling Goldberg
Productions v. Bodek & Rhodes, 452 F. Supp. 452, 454 (E.D.Pa.
1978) (finding that *in personam* jurisdiction over non-resident
defendants was proper in a trademark infringement action where
defendants shipped allegedly infringing merchandise into
Pennsylvania.). The fact that the Corporate Defendants
introduced allegedly infringing goods in New Jersey is therefore
sufficient to establish minimum contacts for personal
jurisdiction in an action arising from such contacts. See United
States Golf Ass'n v. U.S. Amateur Golf Ass'n, 690 F. Supp. 317,
321 (D.N.J. 1988)(acknowledging that even a singular contact
with a forum state can serve as the basis for a court's exercise
of *in personam* jurisdiction over a nonresident defendant).

In the instant case, the Corporate Defendants sold and
shipped entire race karts, parts and engines for the karts, and
apparel to NJMP, as well as providing them with graphic design,
printing, and mechanical services. (Quast Dep. 117:14-150:8, KQ
Exs. 48-49; Valentine Dep., RJV Ex. 35.) Discovery revealed the
following shipment of goods and services into the New Jersey:

- Karting America and RJV Enterprises both sold NJMP a
  fleet of karts used on NJMP's Fl New Jersey track and
  bearing the Fl logo. NJMP paid a total of nearly
  $75,000 for the 30 karts. (KQ Ex. 48 at 10, 11.)
- Karting America sold engines for the karts to NJMP
  totaling over $8,000. (KQ Ex. 48 at 9.)
- Karting America sold apparel and an advertising board
  to NJMP totaling almost $400. (KQ Ex. 48 at 6, 12.)

12

- Karting America sold the services of their in house mechanics, Jerome Wright and Chris Coy, and also charged NJMP for the supplies used, and travel expenses from Braintree, MA totaling almost $3,000. (KQ Ex. 48 at 7, 9.)
- Karting America and the MBA Group sold the graphic design services of Nicole Shaw, who was the Senior Graphic Designer and Art Director of Marketing and Advertising for F1Boston and the MBA Group, on at least three separate occasions. (KQ Ex. 48 at 14-16; KQ Ex. 49; Quast Dep. 143:5-145:23, 147:6-148:14, 150.) Ms. Shaw created at least one brochure promoting NJMP's driving school and its F1 New Jersey race track. (Docket Item 63, Deal Decl. Ex. 6, 8.)
- Karting America provided NJMP with the internet platform and domain name F1newjersey.com to create a website to advertise and promote the F1 New Jersey race track. (Valentine Dep. 71:2-22, 117:21-118:15, 122:9-21; RJV Ex. 9; Quast Dep. 43:14-45:17.)

These actions show that Defendants had more than just a single, isolated contact with New Jersey. To the contrary, Defendants had multiple *direct* and *deliberate* contacts with the forum state.

Moreover, the sales of such goods and services was not merely a "fortuitous" connection to the forum as in World-Wide Volkswagen, 444 U.S. at 286, but an intentional sale and shipment of an allegedly infringing product into New Jersey. The goods arrived in New Jersey through the Defendants' actions rather than unilateral conduct of a consumer. See One World Botanicals Ltd, 987 F. Supp. at 324 n.6. Defendants' agreement with NJMP to enter such business transactions bars it from now

13

arguing it has not purposefully availed itself of the privilege of doing business in New Jersey. <u>Burger King</u>, 471 U.S. at 476.

Additionally, Karting America's operation of an internet platform and domain name containing the forum state's name is certainly evidence of Defendants' intention to target residents of New Jersey. On its face alone, the domain name f1newjersey.com is targeted at New Jersey residents. Its goal is to direct viewers to the karting pages of NJMP.com and eventually the physical F1 New Jersey Track, both of which promote Karting America d/b/a F1Boston and New England d/b/a F1Outdoors *within* New Jersey. While this fact alone may not be sufficient to establish jurisdiction, in conjunction with the repeated sales of goods and services directly targeted to a New Jersey company, the Court is convinced the Defendants have purposefully availed themselves of the privilege of doing business in New Jersey. <u>Id</u>.

Furthermore, because the alleged injuries of trademark infringement and unfair competition were felt in New Jersey, it is foreseeable that Defendants would be subjected to litigation in New Jersey. To establish specific jurisdiction, contacts with the proposed forum must not only meet or exceed constitutionally minimum contacts, they must also be related to the cause of action. <u>Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas</u>, 675 F.2d 587, 588 (3d Cir. 1982). The predominant issues

14

in this litigation are (1) trademark infringement and (2) unfair competition. Because Plaintiffs allege that these torts transpired because of the sale of infringing goods in New Jersey, the Corporate Defendants' contacts are related to those~~eir~~ claims. See <u>One World Botanicals Ltd. V. Gulf Coast Nutritionals, Inc.</u>, 987 F. Supp. 317, 326 (D.N.J. 1997) ("It is well established that 'a cause of action for trademark infringement occurs where the passing off occurs.'")(quoting <u>Cottman Transmission Systems, Inc. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994)). The evidence reveals that Defendants sold allegedly infringing F1 products goods (karts, uniforms, apparel, brochures, signs bearing the F1 mark) to a distributor (NJMP) in New Jersey. The marketing services of Ms. Shaw and the provided domain name both utilized the allegedly infringing F1 mark as well. The Court thus finds evidence of Plaintiffs' damages lies within New Jersey and thus the first two prongs of personal jurisdiction, namely, purposeful availment and litigation relation to activities in forum, are satisfied.

   **2. <u>Promoting an allegedly infringing entity in New Jersey</u>**

   The Court is further convinced it has specific jurisdiction over the Corporate Defendants because of their involvement in promoting the New Jersey Motorsports Park's ("NJMP") F1 New Jersey kart-racing facility located in New Jersey. Plaintiffs allege that the Corporate Defendants have a long-standing

mutually beneficial business relationship with NJMP sufficient
for this Court to exercise personal jurisdiction. The Court
agrees.

Discovery revealed that the Defendant entities Karting
America d/b/a "F1 Boston" and New England d/b/a "F1 Outdoors"
directed business into New Jersey by promoting F1 New Jersey, as
well as targeted New Jersey consumers by advertising their own
businesses through NJMP. While discovery did not reveal the
existence of a formal contract between the Corporate Defendants
and NJMP to promote each other's businesses, the Court finds the
record sufficiently supports the inference that such an
agreement, explicit or not, did exist. See One World Botanicals
Ltd., 987 F. Supp. at 322 (in deciding whether the plaintiff has
satisfied his burden of proving minimum contacts on a motion to
dismiss, a court resolves all disputes concerning material facts
in the plaintiff's favor.).

As such, the cross promotion between the Corporate
Defendants and NJMP is evidence of the Defendants' intentional
contact with New Jersey of a personal and direct form. The
record shows the following:

- Drivers at the F1 New Jersey race track wear uniforms
  bearing the F1 Boston and F1 Outdoors logos, and drivers at
  the tracks in Boston wear uniforms advertising NJMP. (RJV
  Ex. 12, KQ Exs. 47, 63.)
- Karting America and New England advertised NJMP on public
  signs displayed at F1Boston and F1Outdoors race tracks.

16

(Quast Dep. 272:13-279:24.) F1 Outdoors' website has a sign stating "You're invited to join us at NJMP in Millville, NJ." (Docket No. 62, Powers Decl. Ex. 2.)

- NJMP rents out a villa owned by Mr. Valentine and located on its premises in Millville, NJ. (Docket No. 63, Deal Decl, Ex. 33.)

- New England and RJV Enterprises organized and promoted racing events taking place at F1 New Jersey race track. The Corporate Defendants sponsored teams in those races, and sent employees to the New Jersey track to sell karts and parts to attendees. (RJV Ex. 17, 18, 20.)

- Karting America and NJMP had overlapping employees. Yvette Tenoria now works for Karting America after working as Director of NJMP. Jim Omae oversaw the mechanics at NJMP while on the payroll for Karting America. (Quast Dep. 35:16-36:11.)

- CRG America, who lists F1Outdoors and F1Boston as partners, and which was~~ is~~ also co-founded by Mr. Valentine, lists on their website NJMP as a local CRG dealer of their karts. (RJV Ex. 36.)


Such methods of promoting their own race tracks at NJMP, and promoting NJMP at their race tracks, evidences business-seeking activity on behalf of the Corporate Defendants, and provides a reasonable connection between the Defendants and the forum. The nature of such cross-promotion is personal and direct; it is targeted at NJMP, exclusively within the forum of New Jersey, and does not extend to general advertising to the national public. See Hendrickson v. Reg O Co., 657 F.2d 9, 13 (3d Cir. 1981) (finding personal jurisdiction in the Virgin Islands over a defendant Illinois corporation because it solicited business by sending catalogues, price lists, and bulletins, and supplying technical advice by telephone on

servicing its equipment.). The presence of F1 Boston and F1 Outdoors in New Jersey is not fortuitous, but the result of deliberate sales efforts. See Hendrickson, 657 F.2d 9 at 14. Therefore, the Corporate Defendants could reasonably have anticipated being involved in litigation here. This conduct by the Corporate Defendants is purposeful activity intended to preserve a market in New Jersey.

Additionally, such business-–seeking contacts with New Jersey are sufficiently related to Plaintiffs' claims of trademark infringement and unfair competition to satisfy the requirements of specific jurisdiction. The promotion of NJMP's allegedly infringing F1 racetrack is a predominant piece of evidence Plaintiffs rely on in asserting their claims. Thus, the Court is satisfied there is a sufficient relation between the claims and the Corporate Defendants' contacts.

The question presented in deciding personal jurisdiction is whether the Corporate Defendants' activity in New Jersey constitutes minimum contacts in satisfaction of the requirement of due process. This business seeking activity and the continuation of cross-promotion, along with the aforementioned selling of goods and services in the forum state, establishes a persistent course of conduct directed at and within New Jersey. Thus, the Court finds Plaintiffs have satisfied the first two prongs of the test for specific jurisdiction over the Corporate

18

Defendants. <u>See</u> <u>Hendrickson v. Reg O Co.</u>, 657 F.2d 9, 12 (3d
Cir. 1981) ("It is the totality of a defendant's connections
with the forum state that must be considered.").

### 3. Fair Play and Substantial Justice

The Corporate Defendants have not persuaded the Court that
jurisdiction is unreasonable or violates traditional notions of
fair play and substantial justice. <u>World Wide Volkswagen</u>, 444
U.S. at 292. "Once the plaintiff has made out a prima facie case
in favor of personal jurisdiction, the *defendant* 'must present a
compelling case that the presence of some other considerations
would render jurisdiction unreasonable,'" <u>Carteret Savings Bank,</u>
<u>F.A. v. Shushan</u>, 954 F.2d 141, 150 (3d Cir. 1992)(emphasis
added)(citing <u>World Wide Volkswagen</u>, 444 U.S. at 292.) In
determining whether the assertion of jurisdiction violates
traditional notions of fair play and substantial justice, the
Court must consider several factors: the burden on the
defendant, the interests of the forum state, plaintiff's
interests in obtaining relief, the interstate judicial system's
interest in obtaining efficient resolution of controversies,
and, if relevant, the shared interest of the several states in
furthering substantive social policies. <u>Eaton Corp v. Maslym</u>
<u>Holding Co.</u>, 929 F. sup. 792, 798 (D.N.J. 1996)(citing <u>Asahi</u>
<u>Metal Indus. Co., Ltd. v. Superior Court of California, Solano</u>
<u>Cty.</u>, 480 U.S. 102, 113 (1987); <u>World Wide Volkswagen</u>, 444 U.S.

at 292; <u>Burger King</u>, 471 U.S. at 476-77). The Court finds that,
on balance, these factors weigh in favor of exercising
jurisdiction.

The Court finds the Corporate Defendants have not met this
burden. The fact that evidence and witnesses are located in
Massachusetts does not, by itself, make jurisdiction
unreasonable. <u>Carteret</u>, 954 F.2d at 150 (the location of some
witnesses in Louisiana does not make New Jersey an "unreasonable
forum."). Although Defendants do not live in any states
adjoining New Jersey, travel to New Jersey from Massachusetts
would not present a special burden to Defendants, as evidenced
by their repeated visits to New Jersey. See <u>Bonomo v. Citra
Capital Management, LLC</u>, 2012 WL 2839370, at *5 (D.N.J. July 9,
2012) (finding jurisdiction proper because defendants showed
evidence of prior travel to New Jersey and New York.). The Court
is not persuaded that trying the case in New Jersey would
compromise efficiency. In particular, New Jersey maintains a
significant policy interest in protecting its residents of its
state against trademark infringement and unfair competition in
connection with interstate business transactions, such as the
present transactions between entities in Massachusetts and New
Jersey. New Jersey's interest in the conduct of honest business
transactions is no less than Massachusetts' interest. As such,
trying the case in New Jersey and examining the lawfulness of

the challenged conduct satisfies the prong of the shared
interest of the several states in furthering substantive social
policies pursuant to the factors. <u>Asahi</u>, 480 U.S. at 116.

Because Plaintiffs have established that the Corporate
Defendants meet the required minimum contacts, and because the
fair play and substantial justice factors are satisfied by
personal jurisdiction in New Jersey, the Defendants' motion to
dismiss pursuant to F.R.C.P. 12(b)(2) is denied.

## IV.   FORUM NON CONVENIENS

Defendants have moved, in the alternative, to dismiss
Plaintiffs' Complaint under the doctrine of forum non
conveniens. This doctrine allows for dismissal, at the Court's
discretion, "when an alternative forum has jurisdiction to hear
the case, and when trial in the chosen forum would 'establish
oppressiveness and vexation to a defendant . . . out of all
proportion to plaintiff's convenience,' or when the 'chosen
forum [is] inappropriate because of considerations affecting the
court's own administrative and legal problems.'" <u>Piper Aircraft
Co. v. Reyno</u>, 454 U.S. 234, 241 (1981)(quoting <u>Koster v.
Lumbermens Mutual Casualty Co.</u>, 330 U.S. 518, 524 (1947)).

The Court will not dismiss the claims based on the doctrine
of forum non conveniens. Defendants' request that this Court
decline jurisdiction under the doctrine of forum non conveniens
is misplaced. "The federal doctrine of forum non conveniens has

continuing application only in cases where the alternative forum is abroad." American Dredging Co v. Miller, 510 U.S. 443, 449 n. 2 (1994); Sinochem Int'l Co. Ltd v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007). This came about as a consequence of the federal venue transfer statute, 28 U.S.C. § 1404(a), which states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under this statute, "[d]istrict courts were given more discretion to transfer . . . than they had to dismiss on grounds of forum non conveniens." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981). As a result, Congress' codification of the doctrine has "provided for transfer, rather than dismissal, when a sister federal court is the more convenience place for trial of the action." Sinochem, 549 U.S. at 430. The Court will not dismiss the Defendants based on the doctrine of forum non conveniens, but will next consider whether transfer to Massachusetts would be appropriate.

## V. TRANSFER TO DISTRICT OF MASSACHUSETTS

As an alternative to dismissal, Defendants ask this Court to exercise its discretion pursuant to 28 U.S.C. § 1404 to transfer this action to the United States District Court for the District of Massachusetts. As mentioned supra, a district court is authorized to "transfer any civil action to any other

22

district or division where it might have been brought," if the transfer serves "the convenience of the parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a). The Court is vested with broad discretion under this statute to decide whether a transfer of venue is appropriate given considerations of fairness and convenience in the particular case. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). In evaluating the propriety of transfer, courts consider "a wide range of public and private interests." Yocham v. Novartis Pharm. Corp., 565 F. Supp. 2d 554, 557 (D.N.J. 2008). As to the private interests, courts specifically consider:

> (1) Plaintiff's forum preference; (2) whether the claim arose elsewhere; (3) the convenience of the parties; (4) the convenience of the witnesses; and (5) the location of books and records.

See Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995)(citations omitted). The public interest factors, in turn, include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative court congestion; (4) the local interest, if any, in deciding local controversies at home; (5) the public policies of the fora; and (6) the relative familiarity of the trial judge with the applicable law.

See id. at 879-80 (citations omitted). Nevertheless, given the paramount importance of the plaintiff's chosen forum, its choice will rarely be disturbed "unless the balance of interests

strongly favor transfer." Fernandes v. Deutsche Bank National
Trust Co., 157 F. Supp. 3d 383, 390 (D.N.J. 2015) (citing Gulf
Corp. v. Gilbert, 330 U.S. 501, 508-509 (1947); see also Yang v.
Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006).

**A. Private Factors**

The private interests in this case weigh against transfer.
First, Plaintiffs filed the instant action in New Jersey.
Defendants argue that the presumption in favor of a plaintiff's
choice of forum does not apply in the present case because
Plaintiffs are not litigating in their home forum. Where, as
here, the Plaintiffs—citizens of the Netherlands and England—are
foreign to the forum of New Jersey, the Plaintiffs' choice may
indeed deserve less deference "because it may be less reasonable
to assume that a venue which is not the plaintiff's home forum
is convenient." Burke v. Quartey, 969 F. Supp. 921, 929 (D.N.J.
1997)(quoting Lony v. E.I. DuPont de Nemours & Co., 935 F.2d
604, 609 (3d Cir. 1991)). However, reluctance to assume that a
foreign plaintiff chose the forum in the interest of convenience
"can be readily overcome by a strong showing of convenience."
Lacey v. Cessna Aircraft Co., 932 F.2d 170, 179 (3d Cir.
1991)(Lacey I). "Even where the court might afford less
deference to a foreign plaintiff's choice of forum, it remains
the defendant's burden to show by a strong preponderance the
convenience of the alternative forum." Burke, 969 F. Supp. at

929 (emphasis added) (citing Mediterranean Golf, Inc. v. Hirsch,
783 F. Supp. 835, 842 (D.N.J. 1991)).

The Court is persuaded that Plaintiffs chose New Jersey out
of convenience, not merely to vex, harass, or oppress the
Defendants. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508
(1947). Plaintiffs assert they chose New Jersey to litigate
their claims for several reasons, including the fact that
Plaintiffs' lead counsel have their offices in New York and are
barred in New Jersey, while none of their lawyers are barred in
Massachusetts. (Pl. Opp. at 28.) Defendants have not proffered
any evidence to suggest these reasons are invalid, and the Court
finds they weigh against transferring.

While it is undisputed that the claims arose in both
Massachusetts and New Jersey, Defendants contend that the
principal allegations arose from alleged unlawful conduct in
Massachusetts and therefore Massachusetts is the more
appropriate venue. However, Plaintiffs have brought claims under
New Jersey laws which ultimately arose in New Jersey and
allegedly caused harm in New Jersey. It is clear that both
Massachusetts and New Jersey have ties to the facts and claims
involved. Therefore, this factor does not favor either venue.
See Yocham, 565 F. Supp. 2d at 559 (the court found that because
plaintiff's claim had ties to both Texas and New Jersey,
considerations of where plaintiff's claim arose did not favor

25

either venue); see also Medpro, Inc. v. Syneron, Inc., No. 08-
3426 , 2011 WL 6217784, at *3 (D.N.J. Dec. 14, 2011).

Defendants have not shown that the convenience of the
parties and witnesses "strongly" weigh in favor of transfer.
Sandvik, Inc. v. Cont'l Ins. Co., 724 F. Supp. 303, 304 (D.N.J.
1989). The relevant inquiry is whether there is relative ease of
access to Plaintiff's chosen forum, and Defendants have not
persuaded this Court that the inconvenience of bringing
witnesses or discoverable proof to New Jersey is so great as to
warrant transfer. Defendants' predominant argument is that the
ease of access to proof and witnesses is substantially
obstructed because they have "7 witnesses that have discoverable
information . . . [and] all of those individuals reside in
Massachusetts." (Docket Item 22, Def. MTD p. 25.) "The
convenience of witnesses is determined by unavailability at
trial." Medpro, 2011 WL 6217784 at *3 (citing Jumara, 55 F.3d at
879). Thus, without more specific allegations as to how these
witnesses are unavailable in New Jersey, Defendants' argument
that some witnesses and evidence are located in Massachusetts is
alone insufficient to establish inconvenience or unavailability.
See Monarch Envt'l, Inc. v. Velocitor Solutions, No. 11-03041,
2011 WL 4499270, at *4 (D.N.J. Sept. 27, 2011) ("merely citing
witnesses' residences and offices, without more does not
establish inconvenience of unavailability.")(citing Gonzales v.

26

Supervalu Transp., Inc., No. 07-5437, 2008 WL 943018, at *3
(E.D.Pa. Apr. 3, 2008)(requiring "specific factual allegations"
of witnesses' unavailability.). Plaintiffs point to equal
numbers of potential witnesses that reside in New Jersey (Pl.
Opp. 30.) and Defendants have not provided any evidence that
there are witnesses who will refuse to testify or consequently
be unavailable in New Jersey. "The location of the parties
likewise does not thwart litigating this action in New Jersey."
Omega Fin. Servs., Inc. v. Innovia Estates & Mortg. Corp., No.
07-1470, 2007 WL 4322794, at *3 (D.N.J. Dec. 6, 2007)(citing
DiRenzo v. Philip Servs. Corp., 294 F.3d 21, 23-27 (2d Cir.
2002)(holding that venue in New York was proper despite the
majority of witnesses and documents being located in Toronto,
since modern travel is not prohibitively burdensome in terms of
cost or time.)).

In sum, the Court finds the private interest factors weigh
against transferring the claims to Massachusetts.

**B. Public Factors**

Similar to the private interest factors, the public
interest factors also favor retaining venue in New Jersey.
First, a judgment in this case would be equally enforceable in
both New Jersey and Massachusetts. Defendants do not assert
fears of court congestion in New Jersey or make any assertions
whether public policy in Massachusetts will be impacted in this

27

case. Therefore these factors are neutral in the Court's analysis.

In addressing the interest of deciding local controversies at home, Defendants argue that Massachusetts is a more appropriate venue because New Jersey has no vested interest in Plaintiffs as there is no relationship between the forum and the litigation now that the New Jersey defendants were dismissed. This argument is unsound. New Jersey most certainly has an interest in the claim with respect to the Defendants' minimum contacts with the forum, as explained in the preceding discussion surrounding personal jurisdiction, despite the fact that Plaintiffs are not New Jersey residents. Finally, and significantly, Plaintiffs do not bring any claims under Massachusetts law, but have asserted violations of New Jersey Law. See Medpro, 2011 WL 6217784, at *4 (finding the fact that a plaintiff brought claims under New Jersey law weighs against transfer). In sum, the public interest factors also weigh against transfer of venue.

For the reasons discussed above, Defendants' motion to transfer is denied. Ultimately, "the plaintiff's choice of forum will not be disturbed unless the balance of interest tilts strongly in favor of a transfer." Gilbert, 330 U.S. at 508-509. In this case, the balance of private and public interest do not

strongly outweigh Plaintiffs' choice of forum. Therefore, transfer is inappropriate and Defendants' motion is denied.

## VI.   EXTENSION OF TIME FOR VALENTINE'S ANSWER

This Court will grant Mr. Valentine's request for an extension of time to answer Plaintiffs' Amended Complaint because both his motion for dismissal based on the doctrine of forum non conveniens and for transfer of venue pursuant to 28 U.S.C. § 1404(a) were denied. While such an extension of time is not an automatic right, the Court in its discretion finds it reasonable.

## VII. CONCLUSION

For the reasons set forth in the preceding discussion the Court will exercise its jurisdiction over Defendants and decline to transfer venue. The Court will permit Mr. Valentine an extension of time of fourteen (14) additional days to answer the Complaint. An accompanying Order will be entered.

**December 8, 2016**               **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                 Chief U.S. District Judge

29